Mr. Zivitz. Hello, Your Honor. May it please the Court, Andrew Zivitz, on behalf of the Plaintiffs and Appellants. Your Honor, the issue here is the same that exists in Ledis, whether or not this complaint can sound in fraud when there's nothing on the face of the complaint that says fraud, says anything associated with fraud, discusses knowledge, discusses intent, discusses concealment, anything of that nature. Well, one difference, certainly, between the two is that in this case there, in Round 1, were allegations of 10b-5 violation. Round 2 dropped those allegations. But the district court of California, Judge Mossman, basically said, look, it's the same thing. And so fraud is fraud. And in the second round, sounds in fraud as well. What is your response on that? Several things, Your Honor. First of all, there are many cases where this has happened before, DDI being one, Biolase being another, both out of the Central District of California, where there were Exchange Act claims and Securities Act claims put together. The Exchange Act claims were taken out the second time around, and the Securities Act claims were held to pass muster under Rule 8a. So there is precedent for this, obviously. As far as Judge Mossman's decision, I would respectfully say that from the oral argument transcript, he came out of the box with a tentative ruling saying that this complaint sounded in fraud. But the time he was through with it, he gave a different one. So it's the one at the end of the day that counts. Yes. No question, Your Honor. And I think that was because defendants did an excellent job at oral argument raising letus. The district court, from a close read of the transcript, gives its tentative ruling that this clearly sounds in negligence, says that there are two scenarios in which the sounds-in-fraud doctrine can require 9b to apply to a complaint. And those situations don't apply here. Then defendants raise letus as a third scenario, the third scenario being what we just discussed. If there's something that's important to the company, management must have known about it, and management must have known that the prospectus was false and misleading, and management must have fraudulently intended to issue that registration statement and prospectus with fraudulent intent. So I think it the court recognized in front at the beginning that the state of the case law was such that this case does not sound in fraud, but was brought back around with the discussion of letus. And I'm going to go back and try to focus on the one, the point that I want to really hear you on, and that is that the district court said that the substance of the alleged misrepresentations or omissions that form the basis of your 10b-5 claim also form the basis of your remaining claims. The first time around. Therefore the first time around. Okay. Yeah. But here's the crucial point. I understand it was round one and round two. I get that. But he said the substance of the claims were the same. And if that's true, it doesn't matter whether it was round one versus round two. He's saying the substance of the claims was the same. That is, they sounded in fraud. I, I, the substance of the claims do not, are not the same. The, when we repled this case, we repled the allegations in negligence and innocence. Remember, negligence is a lesser form of fraud. Yes. So now we're not alleging that they did anything improper as we did the first time around. The complaint was stripped down. It's now just a negligence and innocent conduct complaint. And I might bring to the Court's attention the case that defendants recently filed, I think, on Wednesday, submitted to the Court on Wednesday, which states that you can have conflicting views in concurrent complaints. It doesn't render the second complaint a sham pleading as, as this Court, I think Judge Kaczynski held in the PEA case. I think it's difficult to see from this record what exactly Judge Mosman did because he issued a two-page order referring back to the transcript from below. But at the transcript below, he recognized that from the face of this pleading, it's certainly plausible that some of the things that we alleged were the result of negligent conduct. For example, they, the, we alleged that the company sent out defective goods unintentionally, innocently. The, the Court said, isn't it possible to defendants that it was done out of, you know, inadvertence, innocence. And defendants conceded it's, it's definitely conceivable. So the judge relies on that record when he issues its two-page order. Well, you know, I don't want to quibble with you. I, I think in fairness to the district judge, we all say an awful lot of things during the course of an argument. What matters is his ruling. And he gave about a two-page ruling orally, said he would go line by line, which he did, and he came out with a conclusion. And that differed in some respects from his tentative ruling, but so what? Oh. I mean, the real question, and I, I, the real thing is his ultimate decision. And, and, and why is it that it's, it's incorrect? If the same allegations sound in fraud for one purpose, don't they sound in fraud for all purposes? And the answer I would say is no. And the reason is because as pled, the new allegations do not sound in fraud. Yeah, okay. The, the intent has been pulled out of the complaint. I'll, I'll direct the Court to the DDI case out of the Central District. I think Judge Minella did a wonderful job there, saying that the theory of intent can change from complaint to complaint. Negligence is clearly a lesser form of intent than fraud. If you plead fraud in one case, you realize that, that fraud didn't take place. You can ratchet it back to negligence. That's clear. The judge, you, you bring, touching on the order, the judge, some things you can read into the order is the judge did not find that there was a uniform course of fraudulent conduct alleged here because he claimed to have stripped away the fraud allegations. Now, we're at a loss as to exactly what allegations he found to sound in fraud versus those allegations sounded in negligence. Do you, do you agree with the, his assessment, I think it was his, that, that this thing really turns on, on four, four things, exaggerated customer demand, overstated earnings, overly optimistic statements about the, the Wood Village facility. Actually, that's only three things. I would say yes. Four categories. I would, I would describe them a bit differently, but yes. Okay. So, in, why, why, how is it, in your view, that the company could have negligently misrepresented its earnings? Because. And how is it that the company could have negligently misrepresented when the Wood Village facility opened and what its effect was? I mean, how do you get negligence out of, out of those difficulties? With respect to the revenue recognition, the issue is, did the company inadvertently or innocently ship out defective goods? That's our allegation. If, in fact, that was the case, we allege that it was roughly 15 percent of all PCBs, printed circuit boards, that were, that were. Okay. And your point is it could have, I mean, the quality assurance that it didn't put in place was negligence. Correct. Well, it's, it's not so much that they didn't put it in place, because that's an affirmative act. Or that they, or that they, when they didn't say it, they didn't disclose it, it was negligence. Which is it? I mean, it can be two different things. Well, let, let me back up. I mean, I'm sure the company's not going to say that it intentionally sent out defective products. I mean, you know. But, but the issue here is not, is not the fact that the defective products existed, but rather whether they failed to disclose it. And you're saying they failed to disclose it negligently? Absolutely. Because. Because they just didn't think they had to disclose it? No. Or they made a, they made sort of a malpractice call? I don't understand that. Our allegation is that on the, on the, on the highest level of the company, when they issued this prospectus, they said, we comply with certain quality assurance controls. We manufacturers, manufacture PCBs according to client specifications. Our allegation is that the state of affairs at that time was such that the company on the lowest levels was not following it. Now, we don't, we don't allege that the lowest levels of the company were not following those controls purposely or intentionally. They just didn't do it. Maybe they were rushing to get the boards out the, out of the shop. Maybe they were lazy. It just so happens that the company was not following, the company, again, on the lowest levels, was not following the quality assurance controls that they represented they were in the IPO prospectus. And that absolutely can be done innocently. And Judge Mossman recognized that at, at oral argument. Now, as far, I'm sorry, did you want to add something? Well, yeah. No, but I mean, just what's the next step? So their failure to disclose it is negligent because? It renders the misstatement, the statements in the prospectus false misleading and it omits to disclose the fact that 15 percent of the boards were being shipped out in a defective state. And that's where the revenue allegation comes from. But how do you do that negligently? They didn't know. They just didn't disclose. Oh, they didn't know it. They didn't know it. They failed to investigate. They failed to investigate. They didn't reasonably investigate. From the face of our pleading suggests they didn't know what was going on with respect to quality assurance and quality control. Now, I know defendants are going to get up and they're going to say, this was something that was so important to the company. We must have known about it. But again, you get into that difficult area of, well, is this something that crosses that materiality threshold where management must have known about it? But that would, again, cause all Section 11 claims to sound and fraud. As far as the other allegations are concerned, and now it seems we're getting a bit into the falsity issue, but as far as decreasing demand and decreasing customer contraction, allegations like that, virtually identical, survive in other cases such as DDI and Kensington, Biolase, Supreme out of Third Circuit. The issue is what from the face of this complaint is alleged as to knowledge and concealment and fraudulent intent? And I respectfully submit there is nothing on the face of this complaint that suggests defendants did anything along those lines. Everything was done innocently, negligently, as Judge Paez said, with a failure to reasonably investigate what was the true state of affairs then existing at the company. Again, getting back to some of the issues before the district court, the district court found that the defective product issue was certainly something that was conceivably missed by upper management. So again, what was in the record before does not necessarily support the judge's order. Let me reserve the rest of my time. Thank you. Your Honors, I'm Ron Berenstain for the Merrick's defendants and with my counsel for the underwriters. We're going to split our time. I'm mainly going to discuss the subject that has been now discussed for quite some time, which is the issue of whether or not this complaint should have been dismissed for failure to plead fraud with specificity. And my counsel for the underwriters will address a separate ground to affirm Judge Boston's decision, and that's that even if you look at all the allegations of the complaint, they don't state anything in the prospectus, which is in fact taken as a whole not true. With respect to what happened in this case, as Your Honors have observed, this started out as a combination 10b-5 and Section 11 case. Judge Mossman concluded in dismissing the First Amendment complaint, he found a unified course of fraudulent condom, more like the stack type of analysis, the same allegations that were pled throughout the period, whether it was pre the prospectus, it was after the prospectus, and it was during the prospectus, he found that it was a unified course of fraudulent conduct. 9b had to apply to the Section 11 claims, therefore, and they failed to plead that with specificity. What did the plaintiffs do? They then abandoned, instead of what we expected, we would try to come up with some more detail. They abandoned all pretext of detail and tried to plead a Section 11 case only. It is noteworthy here that unlike Lita's case, what Judge Mossman did in this case, in the Merrick's case, is he gave plaintiffs every benefit of the doubt when it came to looking at the Section 11 allegation standing alone, and he said, I'm going to do what Vest says I should do. I'm not saying that there's a unified course of fraudulent conduct. I'm not saying that the gravamen of the complaint is fraud. I'm going to go by allegation by allegation. I'm going to do a 9b, abramant by abramant by abramant under the old words, now allegation by allegation under the new words. One problem, of course, is that we don't know which ones he picked out. He just concluded. I'm not saying there's anything wrong with it. It just means I don't know what he, why he concluded what he did. Your Honor, I think if you read, as Your Honor has, the entire colloquy at the oral argument, he said exactly what he was going to do, and he said, I'm going to follow the law of this circuit, which Vest tells me to do. If there's allegations of fraud, I... Perhaps I was being too obscure. I mean, he didn't say why he ended up, after having gone through line by line, he concluded that this, that the complaint wasn't any different from the first one. So I guess to be more specific, with respect to these particular discrete issues, whether Cisco was still a customer, whether Wood Village was up and running, and whether you exaggerated returns, why is it that you think that's only, that there has to be fraud and isn't true, can't, is not susceptible plausibly of being a negligence claim? Well, first, Your Honor, I think we start with looking at the allegation of negligence, which plaintiffs put in their complaint. It's a simple and totally speculative assertion that the plaintiff, that the defendants failed to make a reasonable investigation or did not possess reasonable grounds for believing the statements in the prospectus were true. That's all that it is, Your Honor. It doesn't come with any kind of detail. It's pure conclusion. It's an assertion of negligence without any detail as to what the basis for the negligence is. And therefore, Judge Mosman was left with, okay, I have to decide, is this plausibly negligence or more plausibly fraud? It's not a question of whether or not it could be. It could be negligence. The question is whether or not it is plausibly negligence or more plausibly fraud. I understand that that's the question. My question is, why is it that the discrete allegations that are made are not plausibly capable of being read as negligence? Look at the nature and the number of the allegations in this complaint, which I think is what Judge Mosman did. And Your Honor is correct. He was likely influenced by what had been done in the first amendment complaint. He rejected our argument, however, that it seemed to reject it, that the plaintiffs couldn't take positions that were completely, that they could take positions completely contrary to what they alleged in their first amendment complaint. We had argued that those were judicial admissions and they couldn't now say that somebody didn't know when they, the first time he said they did know. But he went through, he looked at the nature and the number of the allegations that plaintiffs alleged, the omissions and misrepresentations, took them, and as Your Honor has said, you're talking about a cataclysmic decline in the customer base of this company. You're talking about a prospectus that came out in January 2004. They alleged that in October or November or December there was a cataclysmic decline in customer base so that, for instance, Cisco, the number, they only had two customers that accounted for more than 10% of the business. This customer was completely off the map before the prospectus came out, completely off the map, went from being the first or second customer to not even being in the top 25. Pretty, the judge looked at that and said, that's not, it's not plausible that the writers of this prospectus, sitting, these professionals working on this prospectus, the defendants, the underwriters working on this prospectus, could possibly miss the fact, could possibly. It's not reasonable. It's pure speculation. You can say it's negligence, but the only thing that's plausible is that they certainly would have noticed that the number one customer of this company was no longer in the top 25. And the same with respect to every single one of the other ones. They talk about the huge decline in the orders. They were putting out 100 to 200 flats per order. This is their allegation. It went from 4 to 5 flats per order. This is taking place in one factory, one place, one factory. They're sending home workers. They're alleging they're sending home workers. I think the only way to look at that is cataclysmic. And then, of course, you add the allegations with respect to the so-called product defect. They're saying that 15% of the products that were going out, as much as 15%, were defective, so much so that another one of their main customers, Motorola, had rejected an entire order. And that the customer relations with Motorola and other key customers were so bad that it was affecting this company's business. Now, is it plausible? Is it plausible that those kind of things could be taking place at a company this size with one factory in a couple-month period before the prospectus was issued, and the writers of the prospectus, at a minimum, Your Honor, it would be reckless, which is the same standard. That is fraud. It is not plausible that it could just be the result of something that the writers of the prospectus missed. And these people don't even allege. They don't allege how it was negligent. They don't allege how somebody missed something like this. That's the route that Judge Mossman followed in doing his analysis. We've heard, Your Honor, about a number of these state court, I mean, the district court cases from other districts. The counsel has mentioned them a number of times, both in the previous argument, this argument, such as DDI and Touchstone and Kensington and JDS Uniface, where, in fact, courts have concluded that Section 11 and 12 claims do not sound like fraud. Most of the time, these cases don't exactly tell us where the reasoning came from. And we also, of course, have the Suprema case from another circuit. But all of these cases, I think, Your Honor, can be explained in a way that the judges were looking for some mechanistic, formulaic approach rather than doing the hard work, the legal analysis that is required by Stack, by Vest, and now particularly by Trombley. And all of those cases, all of those cases are pre-Trombley cases. And in most of those cases, Your Honor, they have exactly the same allegations of negligence, the same allegation of just this failure to investigate. And if you listen to the words of Trombley, it says, a plaintiff's obligation is to provide grounds for his entitlement to relief which requires more than labels and conclusions and formulaic recitations of the elements of the action. That's what all of those cases stand for, and that's the position that the appellants are taking here. They say, all I've got to do, all you've got to do is assert negligence, failure to investigate, and the ballgame is over. And that's what those judges, in every one of those cases I just identified, I think that's exactly what they did. They said, there's words of negligence here. As Judge Peya said, you don't have to in a Section 11 case, you don't have to allege negligence. In all these cases, including the one we have here, they do allege negligence. And it's just the formulaic, mechanistic assertion of negligence which Trombley now tells us those kinds of boilerplate assertions of negligent investigation or negligence diligence. It's just simply the boilerplate. It's not adequate, and the judge's obligation is to engage in the gatekeeper function, the gatekeeper function which Judge Nelson recognized as far back as Stack, and decide whether or not, which is, is it plausible? Is it plausible that this is really negligent? Not that it's theoretical negligence. That's what those, that's what DDI does, that's what UNIFA does, that's what Touchstone does. They just say theoretically it could be negligence. That's just as bad as the cases that allow a plaintiff to disclaim fraud. Saying if you take out the fraud words, you may say fraud, as long as you don't have any fraud, fraud language, then it's okay. Those cases all stand for that proposition. You can't look for certain words, you can't look, you can't rely on simply assertions of negligence. Mr. Horncy, I don't know how much time you wanted to leave for your co-counsel, but... He has, he has, I'll, let me, let me just wrap up and I'll give him, I'll give him, I'll give him some time. You know, one of the things that the, the appellant's claim is that there's some kind of hocus pocus that goes on and went on in this case or these other cases that, that the judge, in this case Judge Mossman, you know, looked behind things, was reading between the lines, was looking into the heads of, of, of what the plaintiffs were alleging or what the underwriters or the other defendants knew. That isn't what goes on here. This is just the kind of legal analysis. It's not, it's not, it's not mystical. It's pure legal analysis that the district judge is required to do. This is, this is exactly what this circuit has been emphasizing and requiring. This is, this is simply another form of, of artful pleading. The sounds and fraud concept clearly falls within that same, that same construct as, as artful pleading and, and the courts in this, in this circuit simply do not allow put, put form over substance and don't allow a plaintiff to plead around a pleading requirement. With respect to the differences between, between the defendant, let me just comment on that to, to, to address a question that Your Honor had in the, in the last group. In this case, there is no differences in the way that the, the court and what way the plaintiffs made their allegations with respect to the underwriters or the other defendants. They treated them all the same. Absolutely no difference whatsoever. The first time that this whole issue of the potential difference between underwriters and, and the other defendants came up was an oral argument and now in the briefs. So number one, number one, they should, they should be, they should be required to stick to their, to stick to their allegations and their allegations don't, don't address any differences with respect to the alleged conduct whether it's, they call it negligence, we call it, we call it, call it fraud. And, and number two is again, given the nature and the number of the kind of assertions, the kinds of allegations here, there would be absolutely no difference. There's no reason to believe, there's no, it's not plausible to believe that the underwriters who were here working, doing the same things, getting ready for this prospectus, doing, could have possibly have, have missed and not seen the kind of cataclysmic events. I could easily see why the underwriters could, could be negligent in not, in not following up on stuff where the company could, would just be plain stupid. I mean, there's, there is a difference and that was the heart of my question, question in the last case. I don't think it works just to say that, that there is no difference. I mean, underwriters are differently situated from the management of a company. There, it would be a, a difference. Okay, I hear that and I mean, we know what the complaint is. Yes. Are you going to give any time to, to counsel? Yes, I'm going to give him the rest of the time. Okay. Thank you. May it please the Court, Daryl Liu for the underwriter defendants. Let me just pick up, pick up on one thing  that there is a defect limited to the shop floor. That's not what the complaint says. They made the same argument before Judge Mossman that this was a shop floor issue. But in fact, the allegations related to defect and revenue decline as a result of defects in the complaint at the shop floor. The problems with major customers are not relegated to the guy's work in the presses. Those are top level issues that come to the attention both of management and in due diligence to the underwriters. This company had five major  and so this notion that this is a shop floor issue these things are secreted in the basement of this company is not borne out by the allegations of the complaint or by common sense. With respect to the issue of the underwriters I will also say that there isn't a basis in the complaint. All the defendants are lumped together. As you said it's one ball of wax here. There's no effort made to distinguish between the knowledge and conduct of the defendant groups. That's not what's going on here. Now let me address in the time I have left an alternative ground to affirm this judgment below. And that is that even if you believe the allegations of the second amended complaint if you measure those allegations against the actual language of this prospectus the prospectus is not false or misleading. And it's telling that the plaintiff didn't even put in four months after the prospectus false. Let me just start off by noting risk disclosures. This case is in the heartland of cases like Stack Convergent Technologies and the District Court Chang D. Moon. There are when you look at the prospectus not only is there a multitude of warnings and red flags and risks about the dangers of decreased demand but in noting the risk they also note the reality and they say as follows we have experienced terminations reductions and delays in our customers orders. They say that. So this isn't something that was being hidden. The prospectus says we have experienced terminations reductions and delays and they further warn that further terminations reductions or delays could negatively affect our business. And that is sufficient it fairly overflows. It discloses what they say was omitted and it's surrounded by ample cautionary language so that no reasonable investor in this case could have been misled on this prospectus about the nature of an investment in Merrick's. And I think STAC is a sufficient basis to affirm under Rule 8. Now secondly let me just take one of the specific allegations. Let's take Cisco. Okay the prospectus says that Cisco in prior historical periods up through November 03 was in the top 25 and top 5 original equipment customers. That's it. There's no current statement in the prospectus about the status of Cisco about orders from Cisco. It's a historical statement. What the second amended complaint alleges is that because of alleged declines in orders in October 03, November 03 because of declines in orders at the time of the offering so in January Cisco was no longer a top 25 or top 5 customer of Merrick's. Now there is nothing in the prospectus that says that in fact is the case. The Merrick's as customer Cisco fell from the top 25 to zero. Furthermore under this court's decision in Verifone an accurate historical listing of a customer among a list of customers even prominent customers does not imply an existing status or number of orders at the time the prospectus is issued. And that's just an example. I urge you to look at each allegation and measure it against the prospectus and I think that rule 8 supplies an alternative ground to affirm this as well as of course the fact that the complaint sounds like fraud. Thank you. Okay. Thank you Mr. Liu. Mr. Zivitz. Hello again Your Honors. A few points just touching on Mr. Liu's comments. We allege with respect to the historical statements about customer demand and customer orders that are referenced in the complaint that they had dropped. The historical statements we allege were false and misleading. So I think that's just a touch on that point. As far as the risk disclosures are concerned risk disclosures have teeth with respect to forward looking statements. You can risk away forward looking statements such as I expect we believe we forecast. We're alleging that historical statements and present tense statements were strictly liable. If the statements in your prospectus are materially false and misleading or omit to disclose material facts they're false and misleading for purposes of section 11 you're strictly liable for them. Now of course there's a due diligence defense that applies to the underwriters and management that can come up in the course of discovery or after discovery but the pleading stage the issue is the issuer and everybody else is strictly liable in the face of  allegations of fraud. Now I keep coming back to the issue of with respect to the allegations of fraud I still haven't been able to identify what the allegations of fraud are. All of the allegations of fraud have been assaulted from this because that's what's happening here. They're saying that Cisco dropped orders. There's no way the company couldn't have known about that. That's not what we   know that Cisco dropped orders. That was a material misleading statement from the prospectus and there wasn't a reasonable investigation conducted to assess that. That's negligence. From the face of the pleading that stands. As far as the rule 8A inquiry, while this court's decision is done de novo, so of course you can consider the  8A inquiry, we've already discussed one, the defect issue. That clearly is plausible under a rule 8A inquiry. It's plausible, it's certainly possible, if not likely, that management didn't know things were being shipped out in a defective state. That passes muster under rule 8A. Same thing with increasing or decreasing demand. If demand was decreasing leading up to the IPO, the state of affairs, was that, and it's plausible, if not possible, and likely, that defendants didn't know about it. So, again, to read past the allegations in our complaint, I still don't believe that that passes muster under rule 8A. As far as defendants point that the extent of the misstatements somehow causes this complaint to sound in fraud, defendants raised the issue that there were 48 false misleading statements. Let me just emphasize that a registration statement contains thousands of statements. So to say that 48 statements somehow causes a huge document like that to sound in fraud is a bit of an overstatement. The other issue is that, as Your Honor brought up initially, there were essentially four issues at play here, and there is a   The misstatement is, again, a bit of an overstatement and again gets to the nub of the issue, which is how material, how many misstatements must there be for the court to be in a position to say, you know what, they must have known about it. Where do we draw the line? Is it 48? Is it 100? Is it 148? So I think that's a key issue to take note of as well. I don't have anything further if the court doesn't have any questions. Okay. I don't think so. We hear a lot. Thank you all for your  and for your arguments. The matter just argued will be submitted and the court will stand adjourned. �
judges: Rymer, Nelson, Paez